IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JUAN GONZALEZ,                        : Civ. No. 3:18-CV-2254
                                      :
      Plaintiff,                      : (Judge Munley)
                                      :
      v.                              : (Chief Magistrate Judge Bloom)
                                      :
JOHN P. CHULOCK and                   :
DAVID HUDZINSKI,                      :
                                      :
      Defendants.                     :

REPORT AND RECOMMENDATION

I.   Introduction

      This case comes before us on a motion for summary judgment by

the defendants, John Chulock and David Hudzinski.  The plaintiff, Juan

Gonzalez, sued these defendants under 42 U.S.C. § 1983, alleging certain

actions during an arrest violated his constitutional rights.

      The defendants submit that the undisputed facts show they are

entitled to immunity against the bulk of these claims and to judgment as

a matter of law on others.[1]  Gonzalez argues there are genuine issues of

material fact that should prevent summary judgment at this time.[2]

---

[1] Docs. 131-133.
[2] Doc. 134.

The motion is fully briefed and ripe for review.[3]  After careful consideration, we conclude that the defendants have shown the undisputed facts entitle them to qualified immunity against most of the federal claims and that sovereign immunity shields them from liability on the state law claims.  Ultimately, we conclude that only one claim, excessive force in violation of the Fourth Amendment, should survive the motion.  Accordingly, we will recommend that the motion be granted in part and denied in part.

## II.    Background[4]

Plaintiff Juan Gonzalez is a resident of Brooklyn, New York, who owns property at 317 Anchor Street in West Hazleton, Pennsylvania.  On July 13, 2018, Gonzalez traveled from New York to visit the Anchor Street property.  While driving onto the property with his uncle, Gonzalez was approached by law enforcement officers from both the Pennsylvania State Police ("PSP") and Immigration and Customs Enforcement ("ICE").  The officers were wearing ski-masks that obscured their faces.  The agents informed Gonzalez that he was under arrest and facing

---

[3] Docs. 133, 134, 138.

[4] The facts herein are derived from defendant's statement of facts (Doc. 132) and plaintiff's counterstatement of facts (Doc. 134 at 1-6).

deportation for being an illegal alien. Gonzalez stated that he was a citizen, and that he could produce a copy of his passport on his mobile phone. The agents physically restrained him to effectuate his arrest on an immigration detainer. Gonzalez alleges that during that restraint, he was violently and unnecessarily slammed against a vehicle, causing injuries to his right arm, wrist, and shoulder.

Once arrested, Gonzalez was brought to PSP's Hazleton barracks, where he spent roughly 30 minutes being processed by ICE. After fingerprinting Gonzalez, law enforcement realized that he was not a deportable alien, but a citizen. Apparently, ICE had believed Gonzalez to be his brother, Pedro Gonzalez, who *was* deportable and had been using Juan's name as an alias. Because Juan Gonzalez was also the subject of a PSP drug investigation, PSP performed a K-9 search on the exterior of his vehicle. That search produced no results, and Gonzalez was released.[5]

---

[5] On May 25, 2019, the same PSP officers involved in the July 13 incident and the instant defendants, Chulock and Hudzinski, facilitated a controlled drug buy from Juan Gonzalez. That ultimately resulted in Gonzalez pleading guilty to one count of manufacture, delivery, or possession with intent to deliver. He was sentenced to 36-72 months incarceration in a state correctional institution.

Gonzalez commenced this action in November of 2018.[6]  Several other defendants were dismissed in 2019 and 2020,[7] and then Gonzalez amended his complaint.[8]  In 2022, the claims against institutional defendant ICE were dismissed,[9] and in 2023 the individual federal defendants were dismissed.[10]  The case was delayed for a time pursuant to Gonzalez's criminal case.[11]  Discovery closed in this matter in August of 2025.[12]  The remaining defendants have moved for summary judgment on all claims against them: assault and battery, and violation of Gonzalez's Fourth and Fourteenth Amendment rights.[13]  That motion is fully briefed and ripe for resolution.[14]  After consideration, we will recommend that the court grant the motion in part and deny the motion in part, permitting only the excessive force claim to proceed against these defendants.

---

[6] Doc. 1.
[7] Docs. 12, 32
[8] Doc. 37.
[9] Doc. 70.
[10] Doc. 99.
[11] Doc. 112.
[12] Doc. 130.
[13] Doc. 131.
[14] Docs. 133, 134, 138.

## III.    Discussion

### A. Motion for Summary Judgment – Standard of Review

The defendants have filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Rule 56(a) provides that a court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] The materiality of the facts will depend on the substantive law.[16] Thus, "[o]nly disputes over facts that might affect the outcome of the suit under governing law" will preclude summary judgment.[17] A dispute is only genuine if a reasonable juror could find in favor of the nonmoving party.[18]

The moving party bears the initial burden to "demonstrate the absence of a genuine issue of material fact," relying on pleadings, depositions, affidavits, and other evidence in the record.[19] If the movant "successfully points to evidence of all of the facts needed to decide the case on the law," the nonmovant can still defeat summary judgment by

---

[15] Fed. R. Civ. P. 56(a).
[16] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).
[17] *Id.*
[18] *Id.*
[19] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

pointing to evidence in the record which creates a genuine dispute of material fact and from which a jury could find in its favor.[20]  However, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[21]  A court may not make credibility determinations or weigh the evidence, but "must view the facts in the light most favorable to the non-moving party."[22]

### B. The Motion for Summary Judgment Should be Granted In Part and Denied in Part.

In his amended complaint, Gonzalez brings three counts against the remaining defendants.[23] Count one alleges assault and battery, count two alleges violation of Gonzalez's Due Process rights, and count three alleges a violation of Gonzalez's Fourth Amendment rights to security and privacy in his home.[24]  Notably, count two is, in our view, substantively alleging three different Fourth Amendment violations as opposed to violations of Gonzalez's due process rights, as discussed in

---

[20] *El v. Southeastern Pennsylvania Transp. Auth. (SEPTA)*, 479 F.3d 232, 238 (3d Cir. 2007).

[21] *Anderson*, 477 U.S. at 249-50 (citations omitted).

[22] *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

[23] A fourth count alleging inadequate supervision and training is not analyzed here as it was brought only against the institutional defendant ICE, who has since been dismissed from the case. (Doc. 70).

[24] Doc. 37 ¶¶ 21-49.

detail below.  After consideration, we conclude that the state law claims are barred by sovereign immunity and that all other claims are barred by qualified immunity—except for the claim of excessive force in violation of the Fourth Amendment, which we conclude should survive this motion.

1. <u>Count One – Assault and Battery</u>

Gonzalez claims the defendants are liable to him for assault and battery, presumably under Pennsylvania law.[25]  The defendants argue that any state law claim is barred by sovereign immunity, and we agree. Pennsylvania law is clear that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."[26] Pennsylvania law has codified ten such waivers, none of which apply here.[27]  There has been no suggestion that these defendants were not Commonwealth employees acting within the scope of their duties, and we therefore have no difficulty in concluding the state law claims of assault

---

[25] Doc. 37 ¶¶ 22-37.
[26] 1 Pa. Cons. Stat. § 2310.
[27] 42 Pa. Cons. Stat. § 8522(b)(1)-(10).

and battery are barred by sovereign immunity.  We recommend the court dismiss these claims.

### 2. Count Three – Security and Privacy in the Home

Gonzalez further claims his arrest was a violation of his Fourth Amendment right to security and privacy in his home.[28]  The defendants argue their actions were protected by qualified immunity.

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[29]  This doctrine "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[30]  While generally a question of law to be decided at the earliest possible stage, "a genuine dispute of material fact on the issue of qualified immunity may preclude summary judgment."[31]

---

[28] Doc. 37 ¶¶ 43-49.
[29] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).
[30] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).
[31] *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity is an affirmative defense that must be established by the official seeking immunity.[32] To determine whether an official is entitled qualified immunity, a court must determine (1) whether the official violated a constitutional right, and (2) whether that right was clearly established.[33]

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right."[34] To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."[35] Courts must not define the right "at a high level of generality."[36] Rather, the inquiry should focus on "whether the violative nature of particular conduct is clearly established."[37] Ultimately, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the

---

[32] *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014) (*citing Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010)).

[33] *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first).

[34] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015).

[35] *Id.* (*quoting Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)).

[36] *Id.* (*quoting Al-Kidd*, 563 U.S. at 742).

[37] *Id.* (*quoting Al-Kidd*, 563 U.S. at 742).

situation he confronted."[38]   The plaintiff bears an initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation.[39]

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts.[40]  Unpublished cases cannot establish a right because they do not constitute binding authority.[41]  In rare cases, the conduct may be clearly established from the obviously unlawful nature of the conduct "even though existing precedent does not address similar circumstances."[42]

Here, Gonzalez appears to acquiesce to the affirmative defense, as his brief in opposition makes no effort to identify caselaw showing his right to security and privacy in his home was clearly established.  While the complaint alleges a general violation of Gonzalez's Fourth

---

[38] *Saucier*, 533 U.S. at 202.

[39] *See Davis v. Scherer*, 468 U.S. 183, 197 (1984); *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).

[40] *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020) (*quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017)).

[41] *El v. City of Pittsburgh*, 975 F.3d 327, 340 (3d Cir. 2020).

[42] *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018) (*citing Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).

Amendment rights, in the context of qualified immunity the relevant inquiry is "whether the violative nature of *particular conduct* is clearly established."[43]   The particular conduct in this matter relates to law enforcement arresting Gonzalez on a valid administrative warrant that was ultimately for another person, his brother, but which the facts suggest the officers legitimately believed to be for Juan.  Gonzalez needed to show that a reasonable officer would have understood, based on legal precedent or something obviously unlawful about the situation, that they could not execute that warrant on that individual.  Nothing in Gonzalez's filings can be said to reach this standard, particularly given that this burden can typically only be satisfied by citation to specific Supreme Court caselaw on a robust consensus of Circuit level caselaw.[44]   We conclude Gonzalez has not carried his burden to show the right in question was clearly established, and so qualified immunity shields the defendants from this claim.

---

[43] *Mullenix*, 577 U.S. at 11 (emphasis added).
[44] *Porter*, 974 F.3d at 449.

11

### 3. Count Two – Fourth Amendment Violations

In count two of his amended complaint, Gonzalez makes a host of claims and accusations against these defendants.  First, he argues that the defendants used excessive force in violation of his Fourth and Fourteenth Amendment rights.[45]  Next, he alleges that his detention for processing was an unlawful deprivation of liberty without due process in violation of the Fourth and Fourteenth Amendment.[46]  Third, he alleges that the defendants maliciously prosecuted him in violation of the Fifth, Sixth, and Fourteenth Amendments.[47]  We construe these as three distinct claims under the Fourth Amendment: (1) excessive force; (2) false arrest and false imprisonment, and; (3) malicious prosecution.[48]  The defendants argue that they are entitled to qualified immunity against these claims.  Below, we consider each of these claims independently and

---

[45] Doc. 37 ¶ 34.

[46] *Id.* ¶ 35.

[47] *Id.* ¶ 36.

[48]  While Gonzalez asserts these claims under the Fourteenth Amendment, these claims clearly fall within the ambit of the Fourth Amendment, and the more-specific provision rule bars consideration of the claims under the Fourteenth Amendment. *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) ("[I]f a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.").

conclude that only the claim of excessive force should survive the instant motion.

### a. False Arrest and False Imprisonment

As explained, we interpret Gonzalez's claim of unlawful deprivation of liberty in violation of his Fourth and Fourteenth Amendment rights as alleging false arrest and false imprisonment in violation of the Fourth Amendment.

In order to "bring a claim for false arrest, a plaintiff must establish (1) that there was an arrest; and (2) that the arrest was made without probable cause."[49]  A plaintiff alleging false imprisonment "must establish: (1) that he was detained; and (2) that the detention was unlawful."[50]  Thus, for both claims, Gonzalez must establish that the arrest was made without probable cause.[51]

Probable cause to arrest exists when facts known to the officer "are sufficient in themselves to warrant a reasonable person to believe that

---

[49] *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).

[50] *Id.* at 202.

[51] *See e.g., Williford v. Collare*, Civ. No. 1:23-431, 2025 WL 1827896 at *6 (July 2, 2025, M.D. Pa) (finding that a showing of probable cause by the arresting officer defeats both false arrest and false imprisonment).

an offense has been or is being committed by the person to be arrested."[52]

Probable cause "requires more than mere suspicion" that a crime has occurred but "does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt."[53] While it "is well established in the Third Circuit that 'the existence of probable cause in a Section 1983 action is a question of fact' and therefore must be decided by the jury [,]"[54] a court may consider probable cause where that determination is necessary to answer the question of qualified immunity.[55] Courts can raise the issue of qualified immunity *sua sponte* where appropriate.[56] We conclude it is appropriate to raise it here, where the exact nature of the claim raised in the complaint is vague and the defendants have raised qualified immunity as a general defense in this matter.[57]

---

[52] *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995).

[53] *Id.*, 71 F.3d at 482-83.

[54] *Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 840 (E.D. Pa. 2000) (quoting *Sherwood*, 113 F.3d at 401).

[55] *See Sherwood*, 113 F.3d at 401 n.4 (explaining there is a tension in holding probable cause to be a question of fact, but qualified immunity a question of law, and implying that a court may consider the existence of probable cause where it is necessary to do so to determine the application of qualified immunity).

[56] *See e.g., Vorobyev v. Wolfe*, 638 F. Supp. 3d 410, 427 n.3 (M.D. Pa. 2022) (citing *Doe v. Delie*, 257 F.3d 309, 312 (3d Cir. 2001)).

[57] There is no prejudice to Gonzalez in our raising this defense here. While it deprives Gonzalez of his opportunity to argue these rights were

14

The government attached several exhibits to the instant motion, including a general investigation report by Hudzinski, which explains that PSP had received intelligence that, *inter alia*, Gonzalez was distributing cocaine, crystal methamphetamine, and heroin out of the home in question.[58]  Additionally, a sworn affidavit from Hudzinski explains that in the course of investigating, he learned that a Pedro Gonzalez was operating under the alias of Juan Gonzalez and was a deportable felon, a fact he confirmed with the Department of Homeland Security.[59]  Hudzinski's affidavit further explains that confirmation of that status with DHS indicated to him that there was probable cause for a final order of removal of Pedro Gonazlez.[60]  These facts are undisputed.

We have no difficulty concluding that these facts created probable cause to arrest Pedro Gonzalez, and that Juan Gonzalez was arrested based on Pedro's use of Juan's name as an alias.  Juan was released from

---

clearly established, we are permitted to consider either *Saucier* prong first, and given that we conclude the uncontested facts show no violation of a constitutional right, showing these rights are clearly established would not change the result.  (*Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first)).

[58] Doc. 132-1 at 1.

[59] Doc. 132-2 at 1-2.

[60] *Id.*

ICE custody once ICE determined that he was a separate person from Pedro.[61]  His detention was extended briefly by PSP for the K9 search, but we conclude that the investigation into drug trade at Gonzalez's home provided probable cause for that search.  We therefore conclude that the arrest and brief detention of Gonzalez were based on probable cause, and there was no constitutional violation.  For those reasons, we conclude the defendants are shielded from liability for these actions by qualified immunity, and we recommend granting the motion for summary judgment as it pertains to these claims.

### b. Malicious Prosecution

Gonzalez also alleges that the defendants violated his constitutional rights by maliciously prosecuting him,[62] which we construe as alleging a violation of the Fourth Amendment.  The elements of malicious prosecution are:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered

---

[61] Doc. 132-2 at 1-2.
[62] Doc. 37 ¶ 36.

16

deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[63]

Given that an absence of probable cause is an essential element of malicious prosecution, we conclude that the defendants' qualified immunity extends to this claim as well, and this claim should be dismissed.

### c. Excessive Force

Finally, Gonzalez alleges a claim of excessive force. While the defendants concede that Chulock and Hudzinski are specifically identified as the alleged perpetrators in the amended complaint, they argue that they are entitled to summary judgment because Gonzalez has failed to produce evidence, past the pleading, that he can accurately identify who used force against him. They argue that Gonzalez made certain statements in his deposition[64] that demonstrate a failure to allege

---

[63] *Halsey v. Pfeiffer*, 750 F.3d 273, 296-97 (3d Cir. 2014).

[64] Among other statements, the defendants cite the follow quotes from Gonzalez's deposition to show he cannot identify his assailants: "They didn't identify s***. They just came –I knew they were supposed –how the f*** you supposed to know somebody with a ski mask."; "They had a ski mask. And they was with the state trooper also. The only person that you could see their face was the state trooper. And one of the f***ing state troopers named Kosinki, he's the mother***er that dragged me out of the f***ing - and the other one, this - the whatchamacallit, the ICE, one of the guys, the skinny guy though, I have the f***ing video." ; "[T]here was

"direct and personal involvement" by these defendants, an essential element of a Section 1983 claim.[65]

The defendants are correct that individual liability under Section 1983 requires a plaintiff to show that the defendant had personal involvement in the alleged constitutional violation.[66]  Personal involvement may be shown through allegations regarding the defendant's own conduct, or that the defendant had knowledge of the unconstitutional conduct and acquiesced in the behavior.[67]

Here, we conclude that Gonzalez has provided evidence from which a jury could conclude the defendants were personally involved in the alleged use of excessive force.  At the outset, Gonzalez's statements identified by the defendants are too ambiguous to conclude as a matter of law that Gonzalez failed to identify them.  While it appears from these statements that Gonzalez may not have known exactly who used what force against him, other statements from his deposition arguably identify

---

another big guy that I told you, there was like f***ing five people on top of me. Between ICE and the state trooper both." (Doc 132-2 at 105-09).
[65] *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 289 (3d Cir. 2018).
[66] *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988).
[67] *Id.*

the defendants as having used the alleged force against him.[68] Additionally, the ambiguity in Gonzalez's deposition is distinguishable from other Third Circuit cases analyzing personal involvement, in that Gonzalez has, in his amended complaint, narrowed his list of potentially liable actors down to *only* the defendants.[69]

Moreover, Gonzalez has submitted a sworn affidavit in which he identifies the instant defendants as his assailants,[70] as well as a sworn affidavit from his uncle, Felix Colon, who was in Gonzalez's car when the arrest began, identifying these defendants as the assailants.[71] Accordingly, given that we must view the evidence in a light favorable to

---

[68] Gonzalez testified that he could see the face of at least one state trooper; an officer "Kosinki" was the one who dragged him out of his car; "Officer Shula" was the one that "f***ed him up"; and that his recording of portions of the events helped him adduce that "Kosinski" and "Shula" were the ones he intended to sue from the outset. (Doc 132-2 at 106-09.)
[69] In contrast, summary judgment was affirmed by the Third Circuit where plaintiffs conceded they could only narrow down the possible offenders to one of two persons, *Howell v. Cataldi et al,* 464 F.2d 272 (3d Cir. 1972); or one of twenty persons, *Sharrar v. Felsing,* 128 F.3d 810 (3d Cir. 1997). Notably, in *Jutrowski v. Township of Riverdale,* the Third Circuit stated that in some circumstances it "may be problematic to require plaintiffs to specifically identify which officers" committed a violation. *Jutrowski,* 904 F.3d at 289. In our view, the officers all being masked may present such a circumstance.
[70] Doc. 132-2.
[71] Doc. 132-3.

the non-movant, we conclude that a jury could find the defendants were personally involved in the alleged use of excessive force, and summary judgment should be denied as to this claim.

## IV.    Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgement[72] be GRANTED IN PART and DENIED IN PART as follows:

1. The motion should be DENIED as to the excessive force claim;

    and

2. The motion should be GRANTED in all other respects.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

---

[72] Doc. 131.

20

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 11th day of May 2025.

<div style="margin-left:40%">

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

</div>